**Ronald JOHNSON, Plaintiff,**

v.

**Paul CARROLL, James Gildea, Robert Elmore, Charles M. Thomas, Anthony Graffeo, Richard Cauble, Francis O'Connor and Garritt E. Howard, Defendants.**

**No. 88 C 733.**

United States District Court, N.D. Illinois, E.D.

Sept. 1, 1988.

---

Hope F. Keefe, Brunswick, Keefe & Deer, Blue Island, Ill., for plaintiff.

Richard M. Daley, State's Atty. of Cook County by Harold E. McKee, III, Asst. State's Atty., Chicago, Ill., for defendant Howard.

Judson Miner, Corp. Counsel, City of Chicago by Stanley J. Sacks, Paul M. Sheridan, Asst. Corp. Counsel, Chicago, Ill., for defendants Carroll, Gildea, Elmore, Thomas, Graffeo, Cauble, and O'Connor.

1. McCullough died of his wounds on January 27, 1986.

## ORDER

BUA, District Judge.

As part of a police investigation into the shooting of his roommate, plaintiff underwent a lengthy interrogation in January 1986. Plaintiff now claims that during his interrogation, seven Chicago police officers and an Assistant State's Attorney physically abused him and violated his constitutional rights. Based on these allegations, plaintiff brings suit against his interrogators pursuant to 42 U.S.C. § 1983. He also raises various state law claims against the eight defendants. At this stage of the lawsuit, this court must consider two motions—one by the seven police defendants, the other by the Assistant State's Attorney—to dismiss certain portions of plaintiff's complaint. For the reasons stated herein, defendants' motions to dismiss are granted in part and denied in part.

## FACTS

For the purpose of ruling on a motion to dismiss, this court must accept as true all facts pleaded in the complaint. See Greene v. Finley, 749 F.2d 467, 468 (7th Cir.1984). Therefore, the following depiction of the facts reflects plaintiff Ronald Johnson's portrayal of the events leading up to this lawsuit.

On the evening of January 26, 1986, Johnson discovered that his roommate, Dennis McCullough, had been shot in the basement of the Chicago building where they lived.[1] At 11:45 p.m. that evening, Johnson reported the shooting to the Chicago Police Department. Responding to Johnson's report, two Chicago police officers, defendants Robert Elmore and James Gildea, came to Johnson's home. Shortly after midnight on January 27, 1986, Elmore and Gildea took Johnson into custody and drove him to a police station.

When they arrived at the station, the officers began to question Johnson about the McCullough shooting without giving the suspect his *Miranda* warnings.[2] For

2. Johnson alleges that he did not receive *Miranda* warnings until 12 hours after questioning had commenced.

the next 30 hours, Johnson endured an intense and brutal interrogation session. Seven Chicago police officers [3] took turns questioning Johnson, who repeatedly denied knowledge of or participation in the crime. In the course of the interrogation, the officers subjected the suspect to extreme mental and physical cruelty. The police deprived Johnson of food for the entire 30–hour period. They called him offensive names. They denied his repeated requests to call his mother so that she could contact an attorney. In addition, the interrogating officers kicked, punched, and choked Johnson. They even threatened him with a gun. In the early morning hours of January 28, 1986, defendant Garritt E. Howard, an Assistant State's Attorney, joined in the interrogation. Adopting the officers' tactics, Howard also physically abused and threatened Johnson.

After 30 hours of "interrogation," Johnson, who was bleeding and in great pain, feared that he would suffer further injury if he did not confess to shooting McCullough. Consequently, at 5:30 a.m. on January 28, 1986, Johnson agreed to sign a confession prepared for him by Howard. Even after Johnson confessed, however, his interrogators continued to deny him medical treatment for the injuries they had inflicted.

The State's case against Johnson never went to trial. On March 30, 1987, Cook County Circuit Court Judge Stephen Schiller granted Johnson's motion to suppress his January 1986 confession. Judge Schiller found that Johnson made the confession involuntarily. Less than three months later, the State of Illinois terminated its prosecution of Johnson.

The lawsuit currently before this court stems from the alleged misconduct of the seven police officers and the Assistant State's Attorney who interrogated Johnson. Seeking relief under 42 U.S.C. § 1983, Johnson claims that his interrogators violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amend-

ments. He is suing the eight defendants in both their individual and official capacities. Johnson also asserts a host of state law claims against defendants. These claims include assault, battery, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and willful and wanton conduct. In addition to asking for compensatory and punitive damages, Johnson seeks attorneys' fees and costs.

## DISCUSSION

The police defendants have moved to dismiss most (but not all) of Johnson's many claims. While adopting most of his codefendants' arguments, Howard raises some additional issues in his own motion to dismiss. In evaluating these motions, this court will first examine defendants' challenges to Johnson's federal claims. The court will then analyze defendants' attacks on Johnson's state law claims.

### I. FEDERAL CLAIMS UNDER SECTION 1983

#### A. *Howard's Liability in His Official Capacity*

Howard contends that the complaint's allegations fail to establish his liability in an official capacity. This court agrees. To maintain an official-capacity suit under § 1983, a plaintiff must show that his injury resulted from the execution of an official policy, custom, or practice. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978); *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). Johnson's complaint makes no effort to demonstrate that Howard acted in accordance with an official policy or custom when he allegedly violated Johnson's constitutional rights. For this reason, the court dismisses all § 1983 claims against Howard in his official capacity.

#### B. *Fourth Amendment*

Howard also argues that he has not infringed Johnson's Fourth Amendment

---

**3.** Defendants Elmore, Gildea, Paul Carroll, Charles Thomas, Anthony Graffeo, Richard Cau-

ble, and Francis O'Connor.

rights because he did not participate in Johnson's arrest. This argument mistakenly assumes that in the case of an improper arrest, a Fourth Amendment violation occurs only at the time the suspect is seized. The courts have taken a much more expansive view of the Fourth Amendment: "While an arrest and, therefore, a possibly unconstitutional invasion might be a 'fait accompli,' the Fourth Amendment's protection extends beyond the initial seizure to continuing detention...." *United States v. Fernandez-Guzman*, 577 F.2d 1093, 1097–98 (7th Cir.), *cert. denied*, 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978). Because Johnson was arrested without a warrant, the Fourth Amendment entitled him to a prompt judicial determination that probable cause existed to justify his continued detention. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed. 2d 54 (1975). The record contains no indication that defendants ever sought such a probable cause determination. If they did not obtain a neutral judicial assessment of probable cause, defendants violated Johnson's Fourth Amendment rights by detaining and interrogating him for 30 hours. As a participant in the interrogation, Howard must share responsibility for any Fourth Amendment violation stemming from Johnson's prolonged detention. Consequently, this court denies Howard's motion to dismiss Johnson's Fourth Amendment claim.

### C. *Fifth Amendment*

The Fifth Amendment forms the basis for three of Johnson's § 1983 claims: due process, self-incrimination, and inadequate *Miranda* warnings. All eight defendants seek dismissal of these claims. After reviewing defendants' arguments, this court concludes that none of Johnson's Fifth Amendment claims can survive defendants' motions to dismiss.

#### 1. Due Process

■ The Due Process Clause of the Fifth Amendment applies only to federal officials. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Jackson v. Elrod*, 655 F.Supp. 1130, 1133–34 (N.D.Ill. 1987). Therefore, Johnson cannot assert a due process claim based on the Fifth Amendment because defendants do not work for the federal government. Nonetheless, Johnson can bring an identical claim under the Due Process Clause of the Fourteenth Amendment, which applies to state and municipal employees such as defendants.

#### 2. Privilege Against Self-Incrimination

■ The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege against self-incrimination has no relevance to Johnson's case against defendants. Johnson never received an opportunity to testify against himself; once Judge Schiller suppressed the January 1986 confession, the State dropped all criminal charges against Johnson. Since Johnson did not incriminate himself during a criminal proceeding, he cannot now claim that defendants violated his right to avoid self-incrimination.[4]

#### 3. *Miranda* Warnings

■ Johnson contends that defendants' initial failure to give him his *Miranda* warnings entitles him to relief under § 1983. This argument misconstrues the nature of the remedy provided by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). That remedy entails nothing more than the suppression of evidence at a criminal trial. A *Miranda* violation cannot form the foundation for an independent civil action because there is no constitutional right to *Miranda* warnings. *Thornton v. Buchmann*, 392 F.2d 870, 874 (7th Cir.1968); *Rodgers v. Lincoln Towing Service, Inc.*, 596 F.Supp. 13, 18 (N.D.Ill. 1984). Thus, Johnson cannot base a claim

---

**4.** The dismissal of Johnson's self-incrimination claim does not absolve defendants of potential liability under the Fourteenth Amendment for their alleged coercion of Johnson's confession. *See, e.g., Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir.), *cert. denied*, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985); *Duncan v. Nelson*, 466 F.2d 939, 944–45 (7th Cir.), *cert. denied*, 409 U.S. 894, 93 S.Ct. 116, 93 S.Ct. 175, 34 L.Ed.2d 152 (1972).

for damages on the mere fact that defendants did not immediately inform him of his rights.[5]

### D. Sixth Amendment

■ Several times during his interrogation, Johnson asked defendants if he could call his mother so that she could contact an attorney. Johnson now asserts that defendants violated his Sixth Amendment right to counsel by denying him permission to call his mother. This claim ignores the narrow scope of the protection afforded by the Sixth Amendment. A criminal suspect possesses "no Sixth Amendment right to place a phone call, be it to an attorney or family members." *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1145 n. 2 (7th Cir.), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). Moreover, a suspect's Sixth Amendment right to counsel does not attach until after the initiation of adversary judicial proceedings. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972). Johnson had no constitutional entitlement to an attorney during his interrogation because the police had not yet filed formal charges against him. Given the factual circumstances of his case, Johnson has failed to state a Sixth Amendment claim against defendants.[6]

### E. Denial of Medical Care—Eighth and Fourteenth Amendments

■ Johnson alleges that defendants denied him medical treatment for injuries he suffered during the interrogation, thereby violating his rights under the Eighth and Fourteenth Amendments. As defendants observe, however, the Eighth Amendment applies only to punishment inflicted after a formal adjudication of guilt. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412–1413 n. 40, 51 L.Ed. 2d 711 (1977). Because Johnson was never convicted of any crime, this court must dismiss his Eighth Amendment claim.

Nonetheless, contrary to defendants' assertions, Johnson has properly asserted a claim for denial of medical care under the Fourteenth Amendment. To maintain such a claim, Johnson must first establish that defendants displayed deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Defendants contend that Johnson has not adequately alleged deliberate indifference on their part. This contention is preposterous. According to Johnson's complaint, defendants beat Johnson until he bled, then made no effort to attend to his medical needs. If defendants' alleged conduct does not constitute "deliberate indifference," then the term has no meaning.

Defendants also argue that Johnson has failed to establish any harm stemming from the denial of medical care. Of course, before Johnson can recover damages based on defendants' disregard for his medical needs, he must demonstrate that some harm directly resulted from the deprivation of medical treatment. *See Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974), *cert. denied,* 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). At this early stage of the liti-

5. In any event, it is doubtful that *Miranda* would offer Johnson any relief at all. Johnson admits that he received *Miranda* warnings after 12 hours of interrogation; and he did not confess until several hours after his interrogators had informed him of his rights. Based on these facts, defendants did not obtain Johnson's confession in violation of *Miranda.*

6. Johnson urges this court to examine his Sixth Amendment claim through the lens of Illinois law. Under the Illinois Code of Criminal Procedure, all arrestees, regardless of whether they are charged with an offense, have the right to consult with an attorney. *See* Ill.Rev.Stat. ch.

38, para. 103–4 (1985). This provision, however, cannot save Johnson's right-to-counsel claim under the Sixth Amendment. A state's rules of criminal procedure do not alter or expand the boundaries of Sixth Amendment rights as defined by the U.S. Supreme Court. In fact, when defining the scope of the Sixth Amendment right to counsel in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court completely ignored the Illinois Code's provision for a more expansive right to counsel. Thus, Illinois law cannot cure the deficiencies of Johnson's Sixth Amendment claim.

gation, however, it would be premature to dismiss Johnson's claim based on an insufficient showing of harm. Until Johnson has an opportunity to present medical evidence, this court cannot properly evaluate the harm caused by defendants' failure to provide medical treatment. Johnson should receive a fair chance to substantiate his allegations of harm. Therefore, the court denies defendants' motion to dismiss Johnson's Fourteenth Amendment claim for denial of medical care.

## II. STATE LAW CLAIMS

### A. *Substantive Claims*

■ At the time of Johnson's interrogation, Illinois law required anyone suing a local government entity or its employees to give those defendants notice of the lawsuit within one year after the cause of action accrued. Ill.Rev.Stat. ch. 85, para. 8–102 (1985) (repealed Nov. 25, 1986). Failure to comply with this notice requirement results in dismissal of a plaintiff's state law claims. *Id.* ch. 85, para. 8–103 (1985); *see also Franceshini v. Bettilyon*, 587 F.Supp. 906, 908 (N.D.Ill.1984). Johnson concedes that he failed to provide defendants with timely notice of any of his state claims except malicious prosecution. He contends, however, that the notice requirement does not apply to his case. First, Johnson argues that Illinois law does not require plaintiffs to give notice to governmental defendants who, like Johnson's interrogators, engaged in "willful and wanton conduct." In fact, the Illinois Tort Immunity Act makes no such exception: "Notice is required under the Act for any civil action commenced against a local public entity or any of its employees, whether involving negligence or wilful and wanton conduct." *Zagar v. Health & Hospitals Governing Comm'n*, 83 Ill.App.3d 894, 899, 39 Ill.Dec. 112, 116, 404 N.E.2d 496, 500 (1980). Alternatively, Johnson asserts that his failure to provide notice does not affect his ability to sue defendants as individuals. Apparently, he is referring to the inapplicability of

§ 8–102 to cases involving acts beyond the scope of a defendant's employment. This exception, however, does not help Johnson. Even if the eight defendants committed intentional torts against Johnson, they clearly acted within the scope of their employment when they allegedly performed the acts on which this lawsuit is based. *See Franceshini*, 587 F.Supp. at 909. Finally, Johnson claims that § 8–102 does not apply to Howard because he works for the State of Illinois, not a local government entity. For purposes of notice, however, it makes no difference whether Howard works for Cook County or the State of Illinois. Even assuming that Howard is a state employee, Illinois law at the time of Johnson's interrogation required that the state and its employees receive the same notice of suit afforded to local government defendants. *See* Ill.Rev.Stat. ch. 37, para. 439.22–1 (1985).

Try as he might, Johnson cannot avoid the consequences of his failure to comply with Illinois notice procedures. This court dismisses all of Johnson's state law claims except malicious prosecution.

### B. *Attorneys' Fees*

■ In connection with his state law claims, Johnson asks for attorneys' fees without citing any statutory basis for his request. In the absence of a statute or an agreement, the successful litigant in a civil suit may not recover attorneys' fees or costs from his adversary. *Saltiel v. Olsen*, 85 Ill.2d 484, 488, 55 Ill.Dec. 830, 832, 426 N.E.2d 1204, 1206 (1981); *Ritter v. Ritter*, 381 Ill. 549, 46 N.E.2d 41 (1943). In accordance with this rule, the court must dismiss Johnson's request for attorneys' fees based on his state law claims.[7]

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part. This court denies defendants' motions with respect to the Fourth Amendment claim against Howard and the Fourteenth Amendment claim for denial of

---

7. Nonetheless, Johnson may continue to seek attorneys' fees in connection with his civil rights

claims. *See* 42 U.S.C. § 1988 (1982).

medical care. In all other respects, defendants' motions are granted.

IT IS SO ORDERED.