Eric **ROTHNER,** d/b/a **Bell Vending** and d/b/a **Chicago Game Co.,** Plaintiff,

v.

**CITY OF CHICAGO,** et al., **Defendants.**

No. 88 C 3403.

United States District Court, N.D. Illinois, E.D.

Nov. 20, 1989.

---

See also, 692 F.Supp. 916.

Glenn Seiden, Glenn Seiden & Associates, Chicago, Ill., Kenneth Rosenburg, Doredek & Rosenburg, Lincolnwood, Ill., for plaintiff.

Judson H. Miner, Corp. Counsel, City of Chicago by William B. Mackin and Carolyn

A. Bird, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Asserting a host of constitutional violations, plaintiff in this case seeks to invalidate a city ordinance which prohibits certain minors from playing coin-operated amusement devices during school hours. Defendants have moved to dismiss the complaint in its entirety. For the reasons stated herein, defendants' motion to dismiss is granted.

## FACTS

Plaintiff Eric Rothner, d/b/a Bell Vending, and d/b/a Chicago Game Co., is in the business of distributing, leasing, and operating coin-operated amusement devices (commonly known as "video games") in various establishments in the City of Chicago. Rothner's businesses are licensed by the City. In 1988, the City Council passed an ordinance regulating the use of automatic amusement devices. That ordinance provides in pertinent part:

> No person, firm, corporation, organization, or other legal entity shall permit, and it shall be unlawful for, any person under seventeen years of age to operate any automatic amusement device, except upon the premises of the city airports, between the hours of 8:00 a.m. and 3:00 p.m. on days in which the city's public schools are in session.

Chicago, Ill., Mun.Code § 104.2–10 (1988). Rothner claims that after the ordinance went into effect, his business rapidly declined because a majority of his patrons are children under the age of seventeen. Consequently, Rothner filed the instant action against the City of Chicago, former Mayor Eugene Sawyer, Police Superintendent Leroy Martin, and their officers and agents. Rothner contends that the ordinance is unconstitutional on its face, violating the first, fourth, fifth, ninth, and fourteenth amendments to the United States Constitution, and sections 1, 2, 4, 5, 6, and 16 of Article I and section 6(e)(2) of Article VII of the Illinois Constitution of 1970.

## DISCUSSION

### I. *First Amendment*

Rothner first argues that the city ordinance is overbroad, depriving children under the age of seventeen of their freedom of expression and association. The City contends, however, that Rothner does not have standing to assert the first amendment rights of these third parties.

Of course, standing is the threshold issue concerning the authority of this court to entertain plaintiff's claims. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). The standing requirement involves a two-part inquiry. The court must first determine whether there is a "case or controversy" between the parties, subject to the court's Article III jurisdiction. *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). The court then considers whether, as a matter of prudence, the plaintiff is the proper advocate of the rights asserted. *Id.*

In order to satisfy the initial inquiry, the plaintiff must demonstrate a sufficiently concrete and personal stake in the outcome of the litigation—namely, an actual or threatened injury which can be redressed by a decision in his favor. *Id.; Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). In the instant case, the city ordinance provides that it is unlawful to permit any person under seventeen years of age to play video games during school hours. Chicago, Ill., Mun.Code § 104.2–10 (1988). Rothner, as owner and operator of two video game establishments, is directly affected by the ordinance and is subject to its penalties. The City, on the other hand, wishes to further its stated interest of discouraging truancy. Unquestionably, the relationship between the parties is sufficiently adverse, and the case or controversy requirement is met.

The second inquiry regarding standing—what rights Rothner may assert—is more difficult. Even though a federal court may have the constitutional power to hear the

case, it should hesitate to adjudicate the rights of third parties who are not before the court. *Singleton,* 428 U.S. at 113, 96 S.Ct. at 2873. The general rule is that a plaintiff must assert his own rights, and not rest his claims on the rights of third parties. *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. Nonetheless, there are situations in which a plaintiff is permitted to assert the rights of third parties. *Jus tertii* standing, however, is dependent upon the existence of two factual elements. First, the relationship between the litigant and the third party must be such that the third party's right is "inextricably bound up with the activity the litigant wishes to pursue." *Singleton,* 428 U.S. at 114, 96 S.Ct. at 2874. Second, if the third party is unable to assert his rights on his own behalf, and his rights are subject to dilution if the plaintiff is not given standing, then *jus tertii* standing is proper. Moreover, in the context of the first amendment, the rules of standing have been relaxed because the very existence of an overbroad statute can cause persons who are not before the court to refrain from engaging in protected speech. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 59–60, 96 S.Ct. 2440, 2446, 49 L.Ed.2d 310 (1976); *Eisenstadt v. Baird,* 405 U.S. 438, 445 n. 5, 92 S.Ct. 1029, 1034 n. 5, 31 L.Ed.2d 349 (1972); *but see Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973) (the scope of the first amendment exception narrows as the behavior encompassed by the statute "moves from 'pure speech' toward conduct").

In any event, it is appropriate in this case for Rothner to assert the rights of his customers. *See Carey v. Population Servs. Int'l,* 431 U.S. 678, 683–84, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977). Clearly, the activity Rothner seeks to pursue is inextricably bound up with the rights of the third parties who seek access to his services. The application of the law to Rothner necessarily implicates any rights of his patrons; the ability of these persons to fully exercise their purported rights depends on whether Rothner's operations are restricted. Therefore, a denial of standing could have an adverse effect upon the third parties' rights. After all, their rights are at stake in the present litigation in which the *jus tertii* claim is asserted. Because any injury suffered by Rothner could prevent the exercise of his customers' constitutional rights, he may properly assert the rights of those third parties. *See Craig v. Boren,* 429 U.S. 190, 195–96, 97 S.Ct. 451, 455–56, 50 L.Ed.2d 397 (1976) (vendor permitted to assert the constitutional rights of potential customers because the challenged statute directly applied to the vendor and the customers' rights could be impaired if the vendor's claim failed); *see also* Note, *Standing to Assert Constitutional Jus Tertii,* 88 Harv.L.Rev. 423 (1971) (arguing for a more liberal application of *jus tertii* ).

 Despite Rothner's standing to assert the first amendment rights of his potential customers, this court is not convinced that the ordinance in question will have a real and substantial impact on free speech or otherwise significantly deter constitutionally protected expression. In fact, there is no legitimate first amendment right that might be impaired by the ordinance. The ordinance merely prohibits minors under the age of seventeen from playing video games when school is in session. Nothing in the ordinance appears to impact upon speech or incidentally implicate a right of expression. *See Malden Amusement Co. v. City of Malden,* 582 F.Supp. 297, 299 (D.Mass.1983) ("video games are not protected speech within the First Amendment"); *America's Best Family Showplace Corp. v. City of N.Y.,* 536 F.Supp. 170, 174 (E.D.N.Y.1982) (video games " 'contain so little in the way of particularized form of expression' that [they] cannot be fairly characterized as a form of speech protected by the First Amendment"); *see also Caswell v. Licensing Comm'n for Brockton,* 387 Mass. 864, 444 N.E.2d 922 (1983) (video games are not protected under the first amendment). Rather than restraining the dissemination of socially or politically significant ideas, the ordinance in form and substance essentially regulates noncommunicative conduct. Video games provide pure entertainment with virtually no informative value or com-

munication of substantive ideas. *America's Best*, 536 F.Supp. at 173–74. Although the Supreme Court has given entertainment first amendment protection, *see Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981), the entertainment must involve the communication of some idea or information before it will be protected. *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952) (while motion pictures serve to entertain, they also serve as a valuable medium for the communication of ideas, information, and public opinion so as to warrant first amendment protection). It is precisely this informative element which video games lack.

■ Furthermore, a restriction on the use of video games does not impinge upon a first amendment freedom of association. *Malden Amusement Co.*, 582 F.Supp. at 299. The Supreme Court has given protection to an individual's freedom to associate for the advancement of ideas and beliefs. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). This protection, however, does not extend to the gathering of potential customers at an arcade for the sole purpose of amusing themselves. Indeed, Rothner has failed to identify any cognizable group composed of video game players associated for the purpose of advancing their ideas and beliefs. *Cf. NAACP v. Button*, 371 U.S. 415, 430–31, 83 S.Ct. 328, 336–37, 9 L.Ed.2d 405 (1963) (freedom of association preserves the right of the NAACP and its members to associate for the purpose of protecting individuals' constitutional rights and advancing their ideas and beliefs). This court finds that the ordinance does not pose the kind of threat to the open exchange of ideas and expression deserving of constitutional protection.

## II. *Fourth Amendment*

Within Rothner's lengthy and confusing complaint lies a conclusory assertion that the ordinance somehow violates his rights under the fourth amendment. Yet, Rothner has not identified any legitimate fourth amendment right which possibly could have been impaired by the ordinance. Nothing in his complaint even remotely resembles a fourth amendment claim. Therefore, that claim is dismissed.

## III. *Fifth Amendment*

■ Rothner argues that by enacting the ordinance, the City violated his fifth amendment right to due process. The due process clause of the fifth amendment, however, applies only to the federal government, not local governments. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Johnson v. Carroll*, 694 F.Supp. 500, 504 (N.D.Ill.1988). Because the ordinance was enacted by the City of Chicago, Rothner cannot bring a due process claim based on the fifth amendment. Nevertheless, Rothner can assert the same claim under the due process clause of the fourteenth amendment, which applies to state and municipal governments.

## IV. *Ninth Amendment*

■ Rothner's complaint also sets forth a claim under the ninth amendment.[1] Despite Rothner's claim, the ninth amendment is not a source of substantive constitutional rights. Rather, it was created to preserve those fundamental rights which are implicit, though not enumerated, in the Bill of Rights. *O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 569 (N.D. Ill.1987). Concerned that they may have omitted certain rights, the drafters envisioned that the ninth amendment would serve as a savings clause for rights not specifically mentioned in the first eight amendments. *Grossman v. Gilchrist*, 519 F.Supp. 173, 176 (N.D.Ill.1981), *aff'd*, 676 F.2d 701 (7th Cir.1982); *see also Griswold v. Connecticut*, 381 U.S. 479, 486–94, 85 S.Ct. 1678, 1682–87, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring).

---

**1.** The ninth amendment states as follows: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.

In the instant case, Rothner has cited no authority recognizing any kind of unarticulated, fundamental right that is impaired by the city ordinance. Moreover, there are no allegations which identify a specific right that is secured by the ninth amendment. Therefore, Rothner cannot maintain a claim under the ninth amendment.

## V. Fourteenth Amendment

■ In seeking redress under the fourteenth amendment, Rothner complains that the ordinance is arbitrary, irrational, and not reasonably related to the public health and welfare. Rothner has asserted equal protection and due process claims on behalf of himself and the patrons of his establishments.[2]

When a legislative classification intrudes upon the exercise of a fundamental right, see, e.g., Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (right to vote); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel), or particularly disadvantages a suspect class, see, e.g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race), that legislation will be subject to strict scrutiny. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Unable to identify any fundamental right or suspect class that is affected by the ordinance, Rothner will not be able to maintain his equal protection claim if the ordinance is rationally related to a legitimate governmental purpose. City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam); Vaden v. Village of Maywood, Ill., 809 F.2d 361, 365 (7th Cir.), cert. denied, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). Likewise, the ordinance will pass constitutional muster under a due process analysis if it is rationally related to a legitimate state interest based on promoting the public health, safety, or general welfare. Shorez v. City of Dacono, Colo., 574 F.Supp. 130, 133 (D.Colo.1983).

■ The express purpose behind the ordinance is to "encourage all minors to complete at least a high school education and to discourage truancy." Chicago, Ill., Mun. Code § 104.2 (1988) (preamble). The goal of abating truancy promotes not only the welfare of school children, but that of the general public as well. In spite of this legitimate state interest, Rothner claims that the statute is arbitrary and irrational insofar as it applies only to children under seventeen. Rothner also contests the viability of the ordinance with respect to the exemption given to the City's public airports. Neither argument, however, demands that the statute be struck down. In light of the fact that state law requires children under the age of sixteen to attend school, the age classification is not wholly arbitrary. Prohibiting children under seventeen from playing video games during school hours is a reasonable means of discouraging truancy. See Shorez, 574 F.Supp. at 133–34 (city ordinance prohibiting children under the age of sixteen from playing video games during school hours unless accompanied by a parent or guardian is rationally related to the state's interest in preventing truancy). It is also entirely rational to exempt public airports from the ordinance, thereby excluding those persons who are traveling, residing in other jurisdictions, and not attending school within the city limits at the relevant time. As long as the ordinance is rationally related to the legitimate public purpose, the mere fact that it could have been more artfully drafted or effectively written does not preclude its enforcement. "Traditional equal protection analysis does not require that every classification be drawn with precise 'mathematical nicety.'" United States Dep't of Agriculture v. Moreno, 413 U.S. 528, 538, 93 S.Ct. 2821, 2827, 37 L.Ed.2d 782 (1973) (quoting Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153,

2. Defendants challenge Rothner's standing to assert the fourteenth amendment rights of third parties. Under the same standing analysis set forth with respect to Rothner's first amendment claim, this court finds that Rothner may assert the fourteenth amendment rights of his potential customers.

1161, 25 L.Ed.2d 491 (1970)). Finding that the ordinance satisfies the rational relationship test, this court will not require that the ordinance be perfectly tailored to accomplish the objective of deterring truancy.[3]

 Additionally, Rothner argues that the ordinance is unconstitutional because it is unduly vague. An ordinance will be held void for vagueness if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Smith v. Goguen*, 415 U.S. 566, 572 n. 8, 94 S.Ct. 1242, 1247 n. 8, 39 L.Ed.2d 605 (1974) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). Vague laws violate due process because they do not give individuals fair notice of the proscribed conduct, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), and because they do not sufficiently limit the discretion of officials so as to prevent arbitrary or discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

This court does not agree with Rothner that the ordinance is so vague and confusing that it will present substantial problems of misinterpretation and misapplication. The statutory language is easily understood and very straightforward. The ordinance simply prohibits any minor under seventeen years of age from playing video games during school hours. Chicago, Ill., Mun.Code § 104.2–10 (1988). It is also unlawful for any "person, firm, corporation, organization, or other legal entity" to permit such children to play video games during school. *Id.* Failing to see any ambiguity with respect to the scope of this ordinance, the court finds that the ordinance is sufficiently definite to satisfy due process.

**3.** Moreover, the Supreme Court has recognized that the state has "somewhat broader authority to regulate the activities of children than of adults." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). This added authority stems from the fact that children may be peculiarly

### VI. *Illinois Constitution*

In addition to his claims for relief under the federal constitution, Rothner has asserted a multitude of claims under the Illinois Constitution. Specifically, he argues that the city ordinance violates sections 1, 2, 4, 5, 6, and 16 of Article I and section 6(e)(2) of Article VII of the Illinois Constitution. Having dismissed Rothner's federal claims, this court has no jurisdiction over the remaining state law claims. Therefore, Rothner's claims under the Illinois Constitution are dismissed.

### CONCLUSION

For the foregoing reasons, this court grants defendants' motion to dismiss.

IT IS SO ORDERED.

vulnerable to certain unhealthy or undesirable influences. *See Bellotti v. Baird*, 443 U.S. 622, 633–39, 99 S.Ct. 3035, 3042–46, 61 L.Ed.2d 797 (1979). The City's interest in seeing that its children complete high school is certainly significant enough to justify a restriction on their use of video games when school is in session.