**Robert JACKSON, Plaintiff,**

v.

**Richard J. ELROD, et al., Defendants.**

**No. 86 C 1817.**

United States District Court,
N.D. Illinois, E.D.

March 11, 1987.

Robert D. Allison, Chicago, Ill., for plaintiff.

Madeleine S. Murphy, Asst. States Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Defendants, the sheriff and various corrections officials in Cook County, Illinois, move to dismiss this civil rights suit by a pretrial detainee, arguing that it is time-barred and fails to allege any claim upon which relief can be granted.

Plaintiff Robert Jackson, who was detained at the Cook County Jail "from approximately August 22, 1980 to June 11, 1982 and from approximately January 22, 1985 to June 1986," [1] has a "chronic alcohol addiction." Second Amended Complaint, ¶¶ 4, 12.[2] The Cook County Department of Corrections, which operates the jail, provides neither treatment for alcoholism nor any alcoholism self-help materials. Between 1980 and 1982, plaintiff "submitted in excess of 40 form requests seeking, among other things, alcoholism counseling[. N]one were answered or acknowledged by defendants or their agents." *Id.* at ¶ 12.

Frequently during his detention, plaintiff ordered alcoholism and self-help books, many from Alcoholics Anonymous and the Hazelden Center for Chemically Dependent Persons in Center City, Minnesota. With the help of the Church of God Evangel, Cleveland, Tennessee, plaintiff also ordered books to be sent to him directly from the Barnes & Noble publishing firm in New York.

When the books, most of them hardbacks, arrived at the jail, they were not delivered to plaintiff but were returned to the senders. Although they initially denied having returned the books, eventually jail "employees, including the mail room director, informed plaintiff that under Department policy hard cover books were 'not acceptable' because of 'reasons of security.' " *Id.* at ¶ 15.

Plaintiff filed "approximately 30" requests for access to alcoholism and other

---

1. Even though the record does not reflect whether plaintiff is still at the jail, we can decide this motion, since if he succeeds in this suit he can obtain damages even after release.

2. This factual account is drawn from the second amended complaint.

self-help books through the jail's general library, the only library containing the type of books he sought. *Id.* at ¶ 22. He received no response. Lt. Wilner did inform him in March 1981, however, that the general library was off-limits to the general population. Later, Wilner told plaintiff that only inmates twenty-one years and younger could use the general library.[3]

On April 28, 1981, plaintiff asked defendant John Blanks, then-superintendent of the jail's Division IV, the unit in which plaintiff was detained, to tear off the Barnes & Noble books' hard covers so they could conform to department policy. Blanks denied this request as "'too complex' and/or 'time-consuming.'" *Id.* at ¶ 16. Plaintiff also asked Alcoholics Anonymous and others to tear off the hard covers before sending him books. Although the senders complied, these books too were rejected and returned.

Plaintiff repeatedly wrote to defendants Leon J. Cornelious, Blanks' successor in Division IV, and William Sullivan,[4] superintendent of Division I, for permission to receive self-help books both from outside sources and through the jail library. In May 1981, he was transferred from Division IV to Division I, which he describes as "inferior ... more remote ... much older, dirtier, more poorly lit ... withmore [sic] overcrowding and gang violence." *Id.* at ¶ 23. Wilner, Officer Gallagher, and Sgt. Lewis told plaintiff he had been transferred as punishment.

Plaintiff's unsuccessful attempts to obtain self-help books continued. In May 1986, an Officer Otero told him, "'You can't have hard back books in your cell. It's not permitted.' Defendants did not provide an explanation as to why plaintiff never received various soft cover books that he had ordered" from Alcoholics Anonymous. *Id.* at ¶ 15.

Defendants never notified plaintiff that they were rejecting and returning books he had ordered, except for some sent by Barnes & Noble. That notification regarding the Barnes & Nobles books, plaintiff alleges, "was a departure from defendants' usual policy." Id. at ¶ 15.

Plaintiff alleges that throughout the time he was unable to obtain either hardback or softcover self-help materials, other inmates were permitted to receive "popular" or "'girly magazines'" such as Playboy, Penthouse, and Hustler. *Id.* at ¶ 18. This "inconsistent treatment," plaintiff asserts, negates the jail's claim that it was withholding plaintiff's books on security grounds. *Id.* at ¶ 19. He also alleges that convicted state prisoners were granted more access to the type of books he sought than were pretrial detainees like himself.

On March 14, 1986, plaintiff filed this damage suit, pursuant to 42 U.S.C. § 1983 (1982), against Blanks; Cornelious; Sullivan; Philip H. Hardiman, the department's director; Robert N. Glotz, its assistant director of security; and Richard J. Elrod, then-sheriff of Cook County. In his second amended complaint he alleges that these defendants, either personally or by dint of their policy-making roles, refused him delivery of self-help books, without notifying him of such rejections. To punish plaintiff for having exercised his rights, he adds, defendants transferred him to an inferior part of the jail. These acts violated plaintiff's rights "to free speech, due process and equal protection as guaranteed by the First and Fifth Amendments to the United States Constitution and by" Section 1983. *Id.* at ¶ 29.

Before turning to defendants' arguments supporting their motion to dismiss, we strike *sua sponte* the second amended complaint's reference to the fifth amendment. That amendment does guarantee due process and equal protection

---

**3.** By the time the second amended complaint was filed, plaintiff was permitted to use the general library one hour a month. He was not able to find any alcoholism or self-help books, however, until after he had filed his "May 30, 1986 Amended Complaint and ... propound[ed] ... detailed discovery in this case. ..." Second Amended Complaint, ¶ 24.

**4.** The second amended complaint also identifies him as Ward Sullivan. *Compare* Second Amended Complaint, ¶ 2 *with id.* at ¶¶ 10, 11, 28.

rights—but only against intrusion by federal officials. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). When the alleged deprivations occur at the hands of state officials, like the county corrections officials here, relief must be sought under the fourteenth amendment, through the statutory mechanism of Section 1983. *See, e.g., Anderson v. Luther*, 521 F.Supp. 91, 96 (N.D.Ill.1981). Rather than dismiss the second amended complaint on this ground, we grant plaintiff leave to amend it on its face. Thus we proceed, treating this as a suit alleging violations of the fourteenth rather than the fifth amendment.

Defendants first contend that this case should be dismissed as untimely. Apparently, they have fixed on 1980, the year plaintiff entered the jail, as the time all his claims accrued. Motion to Dismiss [Def. Motion], ¶ 1. By filing his original complaint on March 14, 1986, they argue, plaintiff failed to adhere to the applicable statute of limitations. Plaintiff counters that the second amended complaint clearly alleges that his several claims were filed in time. Plaintiff's Memorandum in Opposition to Motion to Dismiss [Plf. Mem.] at 1–4.

■■■ A state's statute of limitations for personal injury actions determines the limitations period for Section 1983 suits. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Accordingly, actions brought in Illinois after *Wilson* was decided on April 17, 1985 must be brought within two years after the claim accrues. *Anton v. Lehpamer*, 787 F.2d 1141, 1142 (7th Cir.1986). Claims that accrued before the *Wilson* decision, however, receive partial retroactive effect: they must be filed within either two years after April 17, 1985 or five years after the accrual date, whichever comes first. *Id.* at 1141, 1146.

■■ In this case, therefore, any claim occurring before *Wilson* was decided must have taken place no earlier than March 14, 1981—five years before plaintiff filed suit. Although plaintiff began ordering self-help books as early as August 22, 1980, none was rejected until April 1981. Second

Amended Complaint, ¶¶ 12, 14. Patently, all book rejections and plaintiff's transfer fell within the five-year limitations period.

Some books were rejected in September 1985 and March and May 1986, after *Wilson* was decided. *Id.* at ¶ 14. To these rejections we must apply the two-year limitations period. Plaintiff filed suit five months after the first of these; thus, all of them are timely. We deny defendants' motion to dismiss on the limitations ground.

Defendants next argue for dismissal on the ground that the second amended complaint fails to attach liability to them. Def. Motion, ¶¶ 2, 3; Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss [Def. Reply] at 6–9. Specifically, defendants contend, plaintiff inadequately alleges their personal involvement; at best, his allegations improperly attempt to hold them liable on a *respondeat superior* basis. Plaintiff maintains that he has alleged defendants personally took part in an unconstitutional policy, and does not allege *respondeat superior* liability. Plf. Mem. at 4–8.

Obscuring this issue is plaintiff's failure to allege whether he is suing defendants in their individual or official capacities. Both sides appear to consider this an individual-capacity suit, yet argue partly on official-capacity grounds. Plaintiff, for example, denies that he has sued the corrections department, but adds, "even if he had, when execution of a government's policies or customs by its representatives inflicts the injury, the government *is* responsible under § 1983." Plf. Mem. at 7 (citing *Monell v. Department of Social Services*, 436 U.S. 658, 688, 694–95, 98 S.Ct. 2018, 2034, 2038–39, 56 L.Ed.2d 611 (1978)). We must therefore assess the second amended complaint as if it alleged that defendants acted in both their individual and their official capacities.

With regard to defendant Blanks, plaintiff specifically alleges that Blanks:

(1) with Cornelious and Sullivan, "deliberately prevented plaintiff from obtaining access to various self-help books dealing with alcoholism treatment and

related self-help matters...." Second Amended Complaint, ¶ 11.

(2) refused plaintiff's request that he tear off books' hard backs and then give them to plaintiff, calling the suggestion "'too complex' and/or 'time consuming.'" Id. at ¶ 16.

Cornelious and Sullivan, meanwhile:

(1) with Blanks, "deliberately prevented plaintiff from obtaining access to various self-help books dealing with alcoholism treatment and related self-help matters...." Id. at ¶ 11.

(2) were sent numerous written requests from plaintiff for receipt of self-help materials. None was answered favorably. After these requests, plaintiff was transferred from Cornelious' Division IV to Sullivan's Division I allegedly as punishment for exercising his constitutional rights. Id. at ¶ 23.

■ To hold a defendant personally liable for damages under Section 1983, plaintiff must specifically allege defendant's personal involvement or knowledge in constitutional deprivations; *respondeat superior* does not apply. *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971). He can establish this personal responsibility by alleging that: the defendant directly participated in the deprivations; or he "act[ed] or fail[ed] to act with a deliberate or reckless disregard of plaintiff's constitutional rights;" or "the conduct causing the constitutional deprivation occur[red] at [defendant's] direction or with [his] knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982). *Cf. Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986) ("to establish a claim against a supervisory official, there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act").

■ In *Crowder*, the Seventh Circuit dismissed allegations against the state corrections commissioner, finding that his general familiarity with prison conditions did not connote any actual knowledge of the terms of plaintiff's confinement. *Crowder*, 687 F.2d at 1005-06. The prison's assistant warden and its classifications director,

however, were held liable, because they were directly responsible for refusing plaintiff legal help and were personally accountable for his status. *Id.* at 1006.

Similarly, in *Duncan v. Duckworth*, 644 F.2d 653 (7th Cir.1981), the court upheld a complaint of inadequate medical treatment against a prison hospital administrator, stating that his "position ... justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct." *Id.* at 655. But it dismissed the warden because of his greater distance from the situation. *Id.* at 656. "It is doubtful," the Seventh Circuit wrote, "that a prison warden would be directly involved in the day-to-day operation of the prison hospital such that he would have personally participated in, or have knowledge of, the kinds of decisions that led to the delay in treatment...." *Id.; cf. Adams*, 445 F.2d at 108 (warden dismissed because no allegations he directly participated in, knew about, or consented to plaintiff's treatment).

In this case, Blanks, Cornelious, and Sullivan each superintended a jail division while plaintiff was detained in it. It is likely that each had some responsibility for mail delivery within his division; indeed, plaintiff's alleged conversation with Blanks confirms this. It seems just as plausible that division heads bear some responsibility for or knowledge of inmate transfers in and out of their divisions. Thus, we hold that plaintiff has alleged personal liability against these three defendants.

■ Plaintiff's lone individual-capacity allegation against the other three defendants states:

Defendants Richard J. Elrod, Philip H. Hardiman and Robert N. Glotz encouraged, directed, ratified and knowingly acquiesced in the policies and actions of defendants John Blanks, Leon Cornelious and William Sullivan as described above, and did so both individually and in pursuance of a common plan or design in knowing disregard of the fact that plaintiff's constitutional rights were thereby violated.

Second Amended Complaint, ¶ 28. This language tracks a passage in *Franklin v. Israel*, 558 F.Supp. 712 (W.D.Wis.1983). Franklin, a state prisoner, had convinced the court that he had been disciplined without a constitutionally adequate statement of reasons. *Id.* at 715. Nonetheless, the court granted summary judgment to the sole defendant, the prison superintendent. Stating that the "highest authority in a correctional facility has no legal responsibility, by virtue of his office alone, for the acts of all staff members under his supervision," the court continued:

> A plaintiff can meet the personal involvement requirement by showing that the defendant actively encouraged, authorized, directed, ratified, or acquiesced in the unconstitutional acts of his subordinates.

*Id.* Franklin had fallen short of that standard, since he had not shown that defendant knew even of the disciplinary committee's meeting, let alone whether its decision was constitutional. *Id.* at 715–16.

This second amended complaint, though it echoes the standard in *Franklin*, fails to allege personal involvement by Hardiman, Elrod, or Glotz in any constitutional deprivation. Nowhere does it indicate that any of the three knew or should have known about plaintiff or his treatment by Blanks, Cornelious, and Sullivan. Plaintiff's bald assertion that Hardiman, Elrod, and Glotz encouraged, authorized, directed, ratified, or acquiesced in their subordinates' acts, without more, does not satisfy the specific-allegation requirement of *Adams v. Pate*, 445 F.2d 105 (7th Cir.1971). Thus we grant the motion to dismiss defendants Hardiman, Elrod, and Glotz from any personal liability for plaintiff's treatment.

█ Even defendants who have no personal responsibility for constitutional deprivations might be liable in their official capacities. An official-capacity suit "operates as a claim against the government entity itself." *Rascon*, 803 F.2d at 274; *accord Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. These defendants may be liable in their official capacities if plaintiff can "show that the actions of the of-

fending officers were taken pursuant to an official—albeit impermissible—policy." *Rascon*, 803 F.2d at 274.

█ To survive a motion to dismiss on this ground, "plaintiff must plead some fact or facts tending to support his allegation that a [governmental] policy exists that could have caused his injury." *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985). The plaintiff in *Strauss* alleged only that an unnamed police officer had beaten and unlawfully arrested him; he did not link his "isolated" mistreatment to a municipal policy. *Id.* at 767. Thus the Seventh Circuit affirmed dismissal of his complaint. *Id.*

Plaintiff here alleges that the corrections department maintained a policy of withholding alcoholism and self-help materials from pretrial detainees, by: refusing them both hardback and softcover books from outside sources, including publishers; not notifying them when books were rejected; denying them access to such materials through the jail library; and punishing them (here, through an intrajail transfer) for objecting to the policy. Although plaintiff describes only his own treatment, several factors support his contention it occurred pursuant to a policy. Plaintiff's requests for self-help materials and his consequent rejections without notification were not isolated. They occurred over a period of years, during which he also was denied such books from the jail library. Jail employees, including defendant Blanks, affirmed a policy against receipt of such materials, at least in hardcover. Other jail employees told him he was transferred as punishment. Clearly, plaintiff alleges a policy that caused him injury. Should he prove that this policy was unconstitutional, any defendant responsible for the policy might be liable. Thus we deny defendants' motion for dismissal from liability in their official capacities.

We turn to defendants' motion for dismissal under Fed.R.Civ.P. 12(b)(6). No claim asserted in the second amended complaint may be dismissed unless plaintiff could prove no set of facts that would entitle him to relief on that claim. *Conley*

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accordingly, we must proceed as if all plaintiff's allegations are true:

> [T]he record under 12(b)(6) is limited to the language of the complaint and to those matters of which the court may take judicial notice.... [T]he defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. ... [T]he defendant ... must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence.

*Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987).

■ Those guidelines assume special importance in the instant case. Censorship of prisoner mail—letters, periodicals, magazines, newspapers, and books—infringes the first amendment rights both of prisoners and those with whom they communicate. *Aikens v. Jenkins,* 534 F.2d 751, 754–55 (7th Cir.1976). *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Procunier v. Martinez,* 416 U.S. 396, 408, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974). By the standard established in *Martinez* and applied to publications in *Aikens,* prison officials may censor plaintiff's receipt of publications only if:

> (1) Withholding the publication furthers "an important or substantial governmental interest unrelated to the suppression of expression;" and

> (2) "The limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved."

*Martinez,* 416 U.S. at 413, 94 S.Ct. at 1811. The Supreme Court has defined three government interests that might justify censorhip: "the preservation of internal order and discipline, the maintenance of institutional security against escape or unau-

thorized entry, and the rehabilitation of the prisoners." *Id.* at 412, 94 S.Ct. at 1810.

Of necessity, the *Martinez* standard requires prison officials to justify their decision to censor a publication; courts will not assume such justifications. *See, e.g., id.* at 415, 94 S.Ct. at 1812. At this stage of the pleadings, it would be premature for us to determine the justifiability of defendants' alleged acts. *Gomez, supra,* at 1039. Therefore, we shall dismiss only those claims that, as a matter of law, implicate no federal right cognizable under Section 1983.

■ Defendants characterize plaintiff's initial claim as merely challenging the department's policy against receipt of hardback books from sources other than the publisher. Def. Motion, ¶ 4. Apparently admitting that the jail has such a publishers-only rule, they contend that it is constitutional.[5] Plaintiff argues that the actual policy's scope is much broader and does violate the Constitution. Plf. Mem. at 8–13.

The seminal opinion on this issue is *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which the Court considered a rule barring pretrial detainees from receiving hardback books from sources other than publishers, bookstores, or book clubs. Pretrial detainees' rights may not be infringed, the Court held, if the restrictions constitute "punishment, or otherwise violate the Constitution." *Id.* at 536, 99 S.Ct. at 1872. It then upheld the book regulation as a "rational response by prison officials to an obvious security problem"—the smuggling of contraband into the prison. *Id.* at 550–51, 99 S.Ct. at 1880. Three factors influenced the Court's decision: the rule was content-neutral; alternative channels for information, such as softcover publications and library books, existed; and the detainees stayed in jail only about sixty days. *Id.* at 551–52, 99 S.Ct. at 1880–81.

Publishers-only rules may violate the Constitution, however, if those factors are

---

5. Nowhere does plaintiff allege that the book rejections deprived him of property. Nor does he seek to recover for such a loss. Thus we

decline to consider defendants' arguments based on this theory. *See* Def. Motion, ¶ 5; Plf. Mem. at 13 n. *; Def. Reply at 5–6.

absent. In *Pratt v. Sumner*, 807 F.2d 817 (9th Cir.1987), the Ninth Circuit recently reviewed a convicted prisoner's complaint that the prison had rejected hardback and softcover books sent to him by law professors. The court noted that, unlike the detainees in *Bell*, the inmate likely would be incarcerated longer than sixty days, and he alleged he could not obtain the legal information he sought except from the law professors' books. Accordingly, the Ninth Circuit reversed the lower court's dismissal of the complaint as frivolous. *Id.* at 819–20.

The circumstances alleged in the case at bar also differ critically from those in *Bell*. Plaintiff's detention lasted more than fourteen months. He alleges that he had no access whatsoever to alcoholism and self-help information during that time: not from library books, nor from rehabilitation services, nor from hardback or softcover materials sent from any outside source, including publishers. Clearly, plaintiff has set forth a cognizable claim of censorship to which defendants must respond.

Plaintiff's allegation that he was denied softcover self-help materials at the same time other softcover materials—including "girly" magazines—were permitted introduces a troubling element not discussed in *Bell* or *Pratt*. The government seldom may censor speech because of content. *See, e.g., Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65 & n. 7, 103 S.Ct. 2875, 2879 & n. 7, 77 L.Ed.2d 469 (1983). The standards enunciated in *Bell* and *Martinez*, meanwhile, expressly govern only content-neutral restictions on speech. *Bell*, 441 U.S. at 551, 99 S.Ct. at 1880; *Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811. Since plaintiff already has established a claim according to the *Bell* and *Martinez* standards, however, we need not now decide whether the jail's policy, if indeed content-based, must undergo stricter judicial scrutiny. *Cf. Kincaid v. Rusk*, 670 F.2d 737, 744–45 (7th Cir.1982) (having stricken censorship regulations according to *Bell*, adds, without establishing standard of review, that regulations further violate first amendment because they are content-based).

Plaintiff further challenges defendants' non-notification policy. Plf. Mem. at 9–12. In *Martinez*, the Supreme Court established that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Martinez*, 416 U.S. at 417, 94 S.Ct. at 1814. It approved a district court order requiring written notice to the inmate, a reasonable opportunity for the author to protest the rejection, and an ultimate decision by a disinterested third party. *Id.* at 418–19, 94 S.Ct. at 1814. The Seventh Circuit has endorsed similar requirements regarding censorship of letters, *Gaines v. Lane*, 790 F.2d 1299, 1305 (7th Cir.1986), and publications, *Aikens*, 534 F.2d at 757. *See also Woods v. Daggett*, 541 F.2d 237, 240–41 (10th Cir.1976). Recently, the Sixth Circuit held that such procedures are required under *Martinez*. *Martin v. Kelley*, 803 F.2d 236, 243 (6th Cir.1986).

Defendants argue that censorship of publications need not entail any procedural safeguards, Def. Reply at 3–4, a view we consider incorrect in light of *Aikens* and the other cases cited above. Even so, they add, no such protections are necessary when the censorship occurs pursuant to a content-neutral security regulation banning hardback books. *Id.* at 4. As we have noted, however, plaintiff here alleges a policy banning all alcoholism and self-help books, hardback and softcover, because of their content. Thus, even if we could reach the merits of defendants' security justifications, see *Gomez, supra*, at 1039, defendants' argument would be irrelevant. Thus we deny their motion to dismiss the non-notification claim.

Defendants also contend that plaintiff's transfer allegation does not state a claim for relief. Def. Motion, ¶¶ 7, 8. In *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Court held that the fourteenth amendment did not guarantee an inmate judicial review of his transfer, as long as it "is within the

sentence imposed upon him *and is not otherwise violative of the Constitution."* *Id.* at 242, 96 S.Ct. at 2547 (emphasis added). Courts have interpreted this phrase to prohibit transfers that punish inmates for exercising their constitutional rights. *E.g., Matzker v. Herr,* 748 F.2d 1142, 1150–51 (7th Cir.1984) (pretrial detainee transferred to another cell block allegedly for seeking access to courts); *Haymes v. Montanye,* 547 F.2d 188 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). Thus defendants' motion to dismiss this claim also is denied.

█ Finally, defendants move to dismiss what they interpret to be a claim that plaintiff was denied rehabilitation services in violation of the Constitution. Def. Motion, ¶ 6. We do not address this contention, because we do not believe that plaintiff has presented such a claim. Rather, we read his allegations of the lack of rehabilitation services to highlight his claim that obtaining alcoholism and self-help books was the only way he could rehabilitate himself. *See* Second Amended Complaint, ¶ 29(A).

### ORDER

Plaintiff's claim for relief under the fifth amendment is stricken *sua sponte;* plaintiff's complaint is amended on its face to state a claim for relief under the fourteenth amendment. Defendants' motion to dismiss the second amended complaint as time-barred is denied. Defendants' motion to dismiss for failure to allege personal involvement is granted with respect to defendants Hardiman, Elrod, and Glotz, and denied with respect to defendants Blanks, Cornelious, and Sullivan. Defendants' motion to dismiss for failure to allege liability in official capacities is denied. All defendants' motions to dismiss the complaint for failure to state a claim upon which relief can be granted are denied. Defendants to answer in 21 days. Discovery closed August 10, 1987; filing of pretrial materials September 10, 1987; pretrial conference set

for October 6, 1987, at 4:30 p.m. Trial set for December 21, 1987 at 9:30 a.m.