Richard COLLINS, Plaintiff,

v.

Sgt. BOPSON,[1] C.O. Witowski, and Sgt. Wetzel, Defendants.

Civ. A. No. 91–6875.

United States District Court, E.D. Pennsylvania.

Feb. 10, 1993.

---

1. Plaintiff named "Sgt. Bopson" in his complaint. His name is in fact "Popson."

Richard Collins, pro se.

Sue Ann Unger, Deputy Atty. Gen., Philadelphia, PA, for defendants.

## MEMORANDUM

HUYETT, District Judge.

Plaintiff Richard Collins, #AS–2659, is an inmate at the Pennsylvania State Correctional Institution at Frackville (SCIF) and has been an SCIF inmate at all times relevant to his claims. He is proceeding *pro se* and *in forma pauperis.* Defendants are SCIF officials: Corrections Officer II (Sergeant) James J. Popson, Corrections Officer I August Witowski, and Corrections Officer II (Sergeant) William Wetzel. Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 and unspecified state law. Plaintiff claims that Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment and violated unspecified state law. Plaintiff asserts that Sergeant Popson and other officers escorted him to the Restricted Housing Unit (RHU) and beat him. He alleges that Sergeant Wetzel stood over him with a baton to make sure that he did not resist the beating, and that Officer Witowski caused the incident by falsely claiming that Plaintiff tried to hit and kick him. Plaintiff requests compensatory damages and declaratory relief. Defendants answered Plaintiff's complaint and Defendant Witowski counterclaimed that Plaintiff assaulted and battered him. Defendants move for summary judgment on Plaintiff's claims. Plaintiff has failed to respond to the motion.

### I. Facts [2]

On January 7, 1991, after hitting inmate Darr, Plaintiff fought with inmate Santiago on SCIF's 8–Block, C–Wing, 4 tier (upper

---

2. When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *O'Donnell v. United States,* 891 F.2d 1079 (3d Cir.1989). Plaintiff has failed to respond to Defendants' motion. The Court has reviewed carefully the declarations and exhibits that accompany Defendants' motion and has constructed the facts from these documents. Where appropriate, the Court will note where the allegations of Plaintiff's complaint differ from these facts. A party, however, cannot rely on the bare allegations of the complaint to show that a genuine issue of material fact exists for trial. Fed. R.Civ.P. 56(e).

level). Santiago swung at Plaintiff and hit him. The time was approximately 2:45 p.m., while inmates on the wing were on "block-out," that is, permitted to remain in the wing areas rather than in their cells. Inmates became spectators surrounding Santiago and Collins.

Officers Sanzatto, Witowski, and Procopio first arrived at the scene to break up the fight. Sanzatto ordered Collins and Santiago to stop fighting. Sanzatto then started to restrain Santiago while Procopio grabbed Plaintiff's hand to block his punch aimed at Procopio or Santiago. Meanwhile, Defendant Witowski pinned Plaintiff's arms to his side in a bear hug. Until Sanzatto completely restrained Santiago, Santiago was swinging upwards towards Plaintiff's face.

After the officers separated the inmates, officers escorted Santiago away and Plaintiff appeared to calm down. Officers Witowski and Procopio released Collins and ordered him to face the wall. Plaintiff complained about Witowski's restraining him and repeatedly suggested that they fight. Plaintiff then disobeyed a repeated order to place his hands on the wall, stepped forward, and swung and kicked at Officer Witowski. Plaintiff lunged at Officer Witowski and pushed him against the railing of the upper tier.[3] Officer Procopio then intercepted Collins, and together with Witowski, quickly forced the struggling Collins face down on the concrete floor. Plaintiff continued to resist as Officer Witowski handcuffed him. Collins received abrasions on his left outer wrist. Officer Witowski received a bruise near his left elbow and a cut on his right hand.

When Officers Witowski and Procopio escorted Plaintiff downstairs on 8–Block he calmed down. From there, Sergeants Popson and Lorady and Officer Dorshefski escorted Plaintiff to the Restricted Housing Unit (RHU). Sergeant Popson held Plaintiff's right arm and Sergeant Lorady held Plaintiff's left arm. The officers escorted Plaintiff to the RHU stripsearch room and remained there during the search. Plaintiff's handcuffs were removed and Defendant Sergeant Wetzel conducted the search. Sergeant Wetzel ordered Plaintiff to stand against the wall and remove his clothes item by item.[4] Officer Kutsko was also present to ensure security during the search. Officer Kutsko was the only person in the stripsearch room with any type of stick, and his only use of it was to show it.[5]

According to the records and declarations submitted, nothing unusual occurred in the stripsearch room and no force was used. After Plaintiff dressed, he was cuffed and escorted to an RHU shower cell where he remained for about ten minutes until prison officials could vacate and prepare an RHU cell for him. Lieutenant Durant saw Plaintiff in the shower cell and tried to interview him, but Plaintiff did not answer Durant's questions.

Plaintiff had a visible slight cut in one eyebrow and a bump or abrasion around one eye when he first entered the RHU. He also had a minuscule cut in his other eyebrow and abrasions on his left wrist near his handcuff. His appearance had not changed from when he first arrived in the RHU at about 2:50 p.m. until when he was escorted from the shower cell to his new cell by 3:30 p.m. Plaintiff received medical attention at 3:30 p.m. The medical reports state that Plaintiff had abrasions on the handcuff area of his left wrist and a cut in or near each eyebrow. One cut was about one-tenth of one inch and the other was small. The registered nurse noted that Plaintiff did not need follow-up treatment and that there were no injuries apart from these minor injuries. The doctor examined Plaintiff the next day and noted that Plaintiff had no problems.

## II. Standard for Summary Judgment

▮ Summary judgment shall be granted "if the pleadings, depositions, answers to

---

**3.** Plaintiff denies that he swung at, lunged at, or kicked Officer Witowski. Complaint ¶ IV.

**4.** Plaintiff alleges that "the arresting officers took me to the R.H.U. unit, and while my hands were cuffed, banged my face and head into the wall.

After falling, they proceeded to stomp and kick me in the face and head." Complaint ¶ IV.

**5.** Plaintiff claims that Sergeant Wetzel and another sergeant stood over him after the beating with night sticks. Complaint ¶ IV.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the movant is the defendant, or the party without the burden on the underlying claim, as here, the movant does not have an obligation to produce evidence negating the opponent's case. The moving party rather must demonstrate that there is a lack of any evidence to support the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). To prove that no genuine factual issues exist, a movant must present a factual scenario without any "unexplained gaps." *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579 (3d Cir. 1992). Once the movant satisfies this initial burden, the proponent of the claim must demonstrate to the court that there is sufficient evidence available from which a jury might return a verdict in his favor under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The nonmoving party cannot rest upon the mere allegations of his pleading. Fed.R.Civ.P. 56(e). If the nonmoving party fails to respond to the motion for summary judgment, as here, the Court shall enter summary judgment against him "if appropriate." *Id.*

### III. The Section 1983 Claim

To prove a claim under 42 U.S.C. § 1983 a plaintiff must show that the conduct complained of was committed by a person acting under the color of state law and that the conduct deprived the plaintiff of the rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Here, Defendants do not contest that they were acting under the color of state law at the time of the factual situation described above. The issue, therefore, is whether Plaintiff has been deprived of a right secured by the Constitution or laws of the United States.

The Eighth Amendment to the Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment is the primary source of substantive protection for convicted inmates in excessive force claims. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). Only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Id.* at 319, 106 S.Ct. at 1084. Whenever an inmate accuses prison officials of using excessive force in violation of the Cruel and Unusual Punishments Clause the court must determine " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Id.* at 320–21, 106 S.Ct. at 1085 (*quoting Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). To make this determination the court may consider the need for the application of force, the extent of the injury inflicted upon the inmate, the threat reasonably perceived by the corrections officials, and "any efforts made to temper the severity of a forceful response." *Id.* 475 U.S. at 321, 106 S.Ct. at 1085.

The Supreme Court held recently that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 997, 117 L.Ed.2d 156 (1992). In the same case, however, the Court recognized that

> not ... every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' "

*Id.* —— U.S. at ——, 112 S.Ct. at 1000 (citations omitted). In *Hudson,* the Court determined that the force used against Hudson,

which caused bruises, swelling, loosened teeth, and a cracked dental plate, was not *de minimis* for purposes of the Eighth Amendment.

## A. *The Claim Against Sergeant Popson*

■ Plaintiff claims that Sergeant Popson pushed him against a wall in the RHU strip-search room and beat him. The corrections officers who were present at the time state in their declarations that no force was used against Plaintiff in the RHU, that nothing unusual occurred, and that there was no change in his appearance between the time that he entered the RHU and the time that he left the RHU. The medical records also negate Plaintiff's assertion that Defendant Popson beat him. The records confirm that the only injuries received by Plaintiff were the minor injuries from the fight with inmate Santiago, and from the officers' restraining and handcuffing him on 8–Block. Inmate Santiago was punching Plaintiff in the head with upward strokes. The cuts received by Plaintiff near each eye were the result of the inmate fight. Plaintiff also had abrasions on his wrist. These were the result of the tight application of the handcuffs by Officer Procopio and Plaintiff's resistance. These injuries preceded Plaintiff's escort to the RHU. His medical examination after his reception in the RHU showed no other injuries.

Plaintiff alleges that as a result of the beating by Defendant Popson he needed bifocal eyeglasses. Plaintiff's claim is pure speculation. Medical records show that Plaintiff received prescription eyeglasses in 1989 and received another stronger prescription in April 1991. Plaintiff needed the stronger prescription and bifocals because of his age.

Medical records show that a dentist extracted one of Plaintiff's front teeth in March 1991. The extraction, however, was unrelated to the events of January 1991. The records show that Plaintiff originally needed a front tooth removed in April 1990, refused the extraction, later requested extraction in December 1990, and finally had the tooth extracted in March 1991.

The records show that all of Plaintiff's injuries found after his RHU admission existed on 8–Block, after the officers subdued

him. The records also show that no force was used on Plaintiff from the time he left 8–Block to the time he entered the RHU. Finally, the doctor who examined Plaintiff the day after his admission to the RHU noted that Plaintiff had no problems.

■ Defendant Popson, therefore, has met his burden of presenting a factual scenario with no unexplained gaps. The record shows that Sergeant Popson did not beat Plaintiff in the RHU. Moreover, even assuming, for the sake of argument, that Sergeant Popson did use force against Plaintiff, the medical evidence in the record indicates that such force was *de minimis* as a matter of law under the Eighth Amendment, *see, e.g., Candelaria v. Coughlin,* 787 F.Supp. 368, 374 (S.D.N.Y. 1992) (alleged force *de minimis* where medical evidence showed no redness, bruising, swelling, or other indication of physical injury); *Brown v. Vaughn,* No. 91–2911, slip op. at 2–3, 1992 WL 75008 (E.D.Pa. Mar. 30, 1992) (allegation that guard struck inmate in chest and spit on him found *de minimis*), or was applied in a good faith effort to maintain or restore discipline. Plaintiff cannot rest on the allegations in his complaint to defeat a motion for summary judgment. By failing to respond, Plaintiff has not presented the Court with evidence on which a jury could return a verdict in Plaintiff's favor under the governing law. Because there are no genuine issues of material fact and Defendant Popson is entitled to judgment as a matter of law, the Court will grant his motion for summary judgment.

## B. *The Claim Against Officer Witowski*

■ Plaintiff claims that Officer Witowski falsely stated that Plaintiff tried to hit and kick him. Based upon the events of January 7, 1991, Plaintiff was charged with assault or fighting, and refusing to obey an oral or written order. A hearing examiner found him guilty. Plaintiff does not challenge this finding. Even assuming that Plaintiff were challenging this finding, an allegation by an inmate that a corrections officer falsely accused the inmate of misconduct does not state a claim under section 1983 where the procedural due process protections set forth in *Wolff v. McDonnell,* 418

U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) have been provided at the inmate's disciplinary hearing. *Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir.1984); *Flanagan v. Shively,* 783 F.Supp. 922, 931 (M.D.Pa. 1992); *Vines v. Howard,* 658 F.Supp. 34, 37 (E.D.Pa.1987). Under *Wolff,* prison officials must provide advance written notice of the violation, provide a written statement of fact-finding, and afford the inmate the opportunity to present witnesses and present evidence in his behalf. *Wolff,* 418 U.S. at 563–66, 94 S.Ct. at 2978–80. In this case, the disciplinary hearing report shows that the prison complied with the due process requirements of *Wolff.*

Although Plaintiff does not state this in his complaint, the Court assumes that the inference that he wishes to draw against Witowski is that because Witowski stated that Plaintiff tried to hit and kick him, Sergeant Popson beat Plaintiff in the RHU. According to 42 U.S.C. § 1983 a civil rights defendant can be liable only if he "subjects, or causes to be subjected" the plaintiff to the challenged constitutional deprivation. 42 U.S.C. § 1983. This means that a plaintiff must allege in his complaint "direct, personal involvement by the defendant in the alleged unconstitutional conduct, or active knowledge and acquiescence on the defendant's part to such conduct." *District Council 47 v. Bradley,* 619 F.Supp. 381, 384 (E.D.Pa.1985). In addition to direct participation, a plaintiff may also show that the defendant acted or failed to act with deliberate or reckless disregard of the plaintiff's constitutional rights or that "the conduct causing the constitutional deprivation occurred at the defendant's direction or with his knowledge and consent." *Jackson v. Elrod,* 655 F.Supp. 1130, 1135 (N.D.Ill.1987).

■ Generally, the issue of a defendant's liability arises in the context of the liability of superior officers for the acts of their inferior officers. Here, Plaintiff is seeking to have the Court hold Corrections Officer I Witowski liable for the alleged beating of Plaintiff by a superior officer, Corrections Officer II (Sergeant) Popson. In any event, the evidence supplied by Defendants along with their motion for summary judgment shows that Defendant Witowski was not in the RHU area where the alleged beating occurred. Thus, Defendant Witowski did not have any direct, personal involvement in the alleged beating. Furthermore, there is a lack of evidence to indicate that Defendant Witowski ordered anyone to beat Plaintiff or that Defendant Popson allegedly beat Plaintiff in response to Plaintiff's actions against Witowski. Thus, Defendant Witowski is entitled to summary judgment because there is a lack of evidence to establish a causative link between Witowski's words on 8–Block and the alleged beating in the RHU.

### C. *Plaintiff's Claim Against Sergeant Wetzel*

■ Plaintiff alleges that Sergeant Wetzel and another sergeant stood over him with their night sticks after the beating. Sergeant Wetzel's alleged action of holding a baton to discourage Plaintiff from defending himself against the alleged beating or to discourage Plaintiff from assaulting the corrections officers fails to state a claim because "mere threatening . . . gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). In addition, there is a lack of evidence to establish a causative link between Sergeant Wetzel's action of holding a baton and the alleged beating of Plaintiff by Sergeant Popson. Defendant Wetzel, then, is entitled to summary judgment because there is a lack of a genuine issue of material fact and he is entitled to judgment as a matter of law.

### IV. The State Law Claims

■ Plaintiff alleges that Defendants violated state and local laws when they committed the actions stated in the complaint. Defendants respond that they are statutorily immune from suit with regard to Plaintiff's pendant state law claims.

It is well established that sovereign immunity is the law in Pennsylvania. *See, e.g., Shoop v. Dauphin County,* 766 F.Supp. 1327, 1333–34 (M.D.Pa.1991); *Faust v. Commonwealth Dept. of Revenue,* 140 Pa.Cmwlth. 389, 592 A.2d 835 (1991); *E–Z Parks, Inc. v.*

*Philadelphia Parking Authority*, 110 Pa. Cmwlth. 629, 532 A.2d 1272 (1987). Commonwealth parties are immune from suit for those actions taken within the scope of their duties, except in those instances in which that immunity has been specifically waived. 1 Pa.Cons.Stat.Ann. § 2310 [6]; *Yakowicz v. McDermott*, 120 Pa.Cmwlth. 479, 548 A.2d 1330 (1988) *appeal denied* 523 Pa. 644, 565 A.2d 1168 (1989).

At 42 Pa.Cons.Stat.Ann. § 8522, the General Assembly specifically waived sovereign immunity in nine areas.[7] Under Pennsylvania law, however, governmental and sovereign immunity waivers which are exceptions to the rule of immunity are to be strictly construed. *Majestic by Majestic v. Commonwealth Dep't of Transp.*, 144 Pa.Cmwlth. 109, 601 A.2d 386 (1991); *Martz v. Southeastern Pennsylvania Transp. Auth.*, 143 Pa. Cmwlth. 25, 598 A.2d 580 (1991).

Defendants enjoy the immunity provided by 1 Pa.Cons.Stat.Ann. § 2310. Defendant corrections officers were acting within the scope of their duties. *See Shoop v. Dauphin County*, 766 F.Supp. 1327, 1334 (M.D.Pa. 1992). Further, the state law claims are not within the narrow exceptions set forth in 42 Pa.Cons.Stat.Ann. § 8522(b). Defendants are immune even if the state violations Plaintiff has vaguely pled required a level of intent. *Id.; Yakowicz*, 548 A.2d at 1334 (Commonwealth agency employee immune from intentional tort claim for defamation).

### V. Conclusion

Defendants have met their burden of showing that there is a lack of evidence to support Plaintiff's claims under section 1983 and Plaintiff has failed to respond to Defendants' motion. The Court concludes that it is appropriate to enter summary judgment in favor of Defendants and against Plaintiff. Because Defendants are statutorily immune from Plaintiff's state claims, the Court will grant summary judgment in favor of Defendants and against Plaintiff on Plaintiff's state law claims.

---

6.  1 Pa.Cons.Stat.Ann. § 2310 (Supp.1990) provides, in pertinent part:
    > Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity....

7.  The nine exceptions to sovereign immunity pursuant to 42 Pa.Cons.Stat.Ann. § 8522 (Supp. 1982), are:
    > (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.